N

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

ADVANCED VASCULAR RESOURCES
OF JOHNSTOWN, LLC,

: Bankruptcy No. 17-70825-JAD

Debtor.

: Related to ECF#'s 1 and 46

SAMIR HADEED, MD and
JOHNSTOWN HEART AND
VASCULAR CENTER, INC.,

Movants,

- V -

ADVANCED VASCULAR RESOURCES
OF JOHNSTOWN, LLC,

Respondents.

## MEMORANDUM OPINION

This alleged voluntary case was commenced by the above captioned debtor, Advanced Vascular Resources of Johnstown, LLC, (the "Debtor") on November 21, 2017.

The Movants set forth above have moved to dismiss (the "Motion to Dismiss") the instant bankruptcy due to, *inter alia*, the fact that this voluntary case was commenced without the requisite action or authority of the Debtor's equity holders.

From the state of the record, it is not surprising that the Movants have filed

00023842

such a motion to dismiss because it is undisputed that the parties have been engaged in vigorous shareholder litigation since 2015. Along these lines, a civil action was previously pending in the United States District Court for the Western District of Pennsylvania at Case No. 3:15-cv-22 and has since been referred to this Court at Adversary No. 18-07001-JAD on January 22, 2018.

No trial date has been set for the shareholder litigation. Because the lawsuit is hotly contested, the Court does not expect that it will be terminated or finally adjudicated over the near horizon.

In addition, because some of the claims in the shareholder action were dismissed (or were going to be dismissed) by the District Court due to lack of complete diversity of citizenship, it has been acknowledged by the Debtor that a significant factor in commencing the instant bankruptcy case is that the putative Debtor desired to take advantage of the broad bankruptcy "related to" subject-matter jurisdiction of the bankruptcy court so as to avoid dismissal of certain of the claims set forth in the shareholder litigation. In this regard, this bankruptcy case is a part of the alleged Debtor's tool-kit for furtherance of litigation.

In any event, the vigorous shareholder dispute now spawns another dispute. This other dispute is whether this bankruptcy case belongs in this Court in the first instance. According to the Movants, the Debtor's bankruptcy filing is *ultra vires* and is nugatory. The alleged Debtor, however, disputes the Movants' contention and this Court held a hearing on the Motion to Dismiss on April 6,

2018.

In connection with the April 6, 2018 hearing, the parties filed a *Stipulation of Facts Regarding the Motion to Dismiss Chapter 11 Case Filed by Samir Hadeed, M.D. and Johnstown Heart and Vascular Center, Inc.* (the "Stipulation of Facts")

According to an Operating Agreement, attached at Exhibit "A" to the Stipulation of Facts, Advanced Vascular Resources, LLC holds an alleged 45% interest in the Debtor and Johnstown Heart and Vascular Center, Inc. is allegedly the remaining 55% equity holder. This very same understanding or interpretation of the Operating Agreement was put forth by the alleged Debtor in the shareholder litigation, and was recited by the District Court in various Memorandum Opinions it issued therein.

The Operating Agreement also contains various provisions limiting how the Debtor can be managed. The Operating Agreement specifically provides that certain actions of the Debtor require prior consent of holders of a "Majority Interest" in the Debtor. It further defines "Majority Interest" to be members of the LLC that "taken together, hold more than sixty six percent (66%)" of the applicable equity units. See Operating Agreement at pp. 5, 11 and 12.

Some of the material transactions requiring the consent of the "Majority Interest," include: selling or disposing all or substantially all of the Debtor's assets, effectuating a merger, altering or changing the rights of certain unit holders, borrowing money or selling of assets beyond certain thresholds,

replacing the Debtor's managers, and filing a bankruptcy case or similar insolvency proceeding. Id. at p. 12. At any given moment, all of these possible transactions are "in play" in a true chapter 11 reorganization.

At the hearing on the Motion to Dismiss, the alleged Debtor appeared to concede that if the member interests are exactly what is set forth in the Operating Agreement, the commencement of this case is *ultra vires*. Nonetheless, the alleged Debtor maintained that the filing of various tax documents (of which the Movants did not participate) reflect that the equity arrangement between the warring factions differ to such a degree that the Movants do not control the majority interests. Of course, the Debtor's reliance upon tax documents to support its position regarding appropriate corporate authority is contrary to the integration clause of the Operating Agreement, which unequivocally states that the Operating Agreement "may not be amended without the written consent of all the Members." Id. at p. 27.

Undaunted by the obstacle presented by the Operating Agreement's integration clause, the alleged Debtor further asserted that the provisions of the Operating Agreement allocating equity interests are of no moment for "want of consideration." In support of this position, the alleged Debtor contends that the amount of the Movants' capital contribution– coupled with their failure to sign certain instrument(s)– makes the equity interest allocation as set forth in the Operating Agreement ineffective. Thus, given these arguments, there is at present

an open issue as to which person or entity holds the "Majority Interest" in the Debtor.

The legal positions of the parties are troubling, because they directly challenge the ability of the Debtor to manage its affairs from a corporate governance perspective. The continuation of this conflict is, of course, nothing but a conflagration of the acrimonious shareholder litigation between the parties.

In light of all of the circumstances of this case, the record is clear and convincing that a chapter 11 trustee should be appointed pursuant to 11 U.S.C.§ 1104(a)(1) and (2). See also In re Marvel Entertainment Group, Inc., 140 F.3d 463 (3d Cir. 1998)(appointment of chapter 11 trustee appropriate given high level of acrimony in complicated case); In re Advanced Electronics, Inc., 99 B.R. 249 (Bankr. M.D. Pa. 1989)(appointment of trustee appropriate where board of directors deadlocked); In re New Towne Development, LLC 404 B.R. 140 (Bankr. M.D. La. 2009)(appointment of chapter 11 trustee where membership dispute effectively paralyzed LLC's management); In re New Orleans Paddleworks, Inc., 350 B.R. 667, 56 (Bankr. E.D. La. 2006)(deadlock of board of directors warranted appointment of chapter 11 trustee).

In rendering its decision to direct the appointment of a chapter 11 trustee, the Court is nonetheless mindful of the costs associated with the appointment of a trustee. However, while this case remains in chapter 11, the creditors and other parties-in-interest need certainty that the estate can be managed by a person with

actual authority to manage the affairs of the Debtor.

The Court is also mindful that the appointment of a chapter 11 trustee is no ordinary transaction and is not taken lightly. See In re Bibo, Inc., 76 B.R. 256, 258 (9th Cir. 1996)(*sua sponte* appointment of chapter 11 trustee warranted).

In balancing the undisputed facts regarding the level of acrimony, the uncertainty of corporate governance that clouds this case, and the fact that the Motion to Dismiss is pending with adequate notice of the governance issues to the parties, the Court finds it appropriate and in the best interests of the estate to exercise its supervisory authority and appoint a chapter 11 trustee. Cf. In re United States Mineral Products Co., 105 Fed. Appx 428, 431-432 (3d Cir. 2004).

For all of these reasons, the Court shall enter two orders: one that directs the Office of the United States Trustee immediately appoint a chapter 11 trustee, and another that schedules a further hearing on the Motion to Dismiss on a date and time that the chapter 11 trustee may appear and be heard on the merits of the matter.

Dated: April 6, 2018

_____
JEFFERY A. DELLER
Chief U.S. Bankruptcy Judge

FILED
4/6/18 3:42 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA