IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ) <br> ) <br> ADVANCED VASCULAR ) <br> RESOURCES OF JOHNSTOWN, LLC, ) <br> ) <br> Debtor. ) <br> _____X <br> ) <br> SAMIR HADEED, M.D. and ) <br> JOHNSTOWN HEART AND ) <br> VASCULAR CENTER, INC., ) <br> ) <br> Movants, ) <br> ) <br> - v - ) <br> ) <br> ADVANCED VASCULAR ) <br> RESOURCES OF JOHNSTOWN, LLC, ) <br> ) <br> Respondent. ) <br> _____X | Case No. 17-70825-JAD <br><br> Chapter 11 <br><br> Related to Doc. #46 |

**<u>MEMORANDUM OPINION</u>[1]**

    Samir Hadeed, M.D. and Johnstown Heart and Vascular Center, Inc. (collectively, the "<u>Movants</u>") have moved to dismiss the above captioned bankruptcy case. Among the reasons averred for dismissal is the contention that this chapter 11 filing is an *ultra vires* filing due to lack of consent by the owners of the "Majority Interest" of the units in the Debtor (which is a limited liability

---

[1] This matter is a core proceeding over which this Court has the requisite subject-matter jurisdiction. <u>See</u> 28 U.S.C. §§ 157(b)(2)(A) and 1334(b). <u>See</u> also <u>In re NNN 123 N. Wacker, LLC</u>, 510 B.R. 854, 857-59 (Bankr. N.D. Ill. 2014)(holding that a motion to dismiss for lack of corporate authority is a core proceeding).

company).[2]

The United States Supreme Court long ago opined that with respect to corporations, the entity vested with "the power of management" has the requisite authority to file a bankruptcy petition. Price v. Gurney, 324 U.S. 100, 104 (1945). Courts have also held in the corporate context that if a bankruptcy petition is filed by persons lacking the "power of management," the bankruptcy case must be dismissed for want of legal authority to do so. See, e.g., In re NNN 123 N. Wacker, LLC, 510 B.R. 854, 858-59 (Bankr. N.D. Ill. 2014). This precept of law operates in all corporate cases, including in those cases filed by a limited liability company. See In re Avalon Hotel Partners, LLC, 302 B.R. 377 (Bankr. D. Or. 2003).

The question before the Court is whether it was proper for the Debtor to file the instant bankruptcy case when one of its equity holders– Johnstown Heart and Vascular Center, Inc. ("JHVC")– did not consent to its filing? The answer to this question is that the bankruptcy filing was unauthorized and improper. As a result, this case shall be dismissed.

The Debtor and JHVC do not dispute that the governance of the Debtor is set forth in the corporate document entitled: *Advanced Vascular Resources of Johnstown, LLC Operating Agreement* (the "Operating Agreement"). See *Motion to*

---

[2] The Court conducted several hearings on the motion to dismiss, and even encouraged the parties to settle their differences after a chapter 11 trustee was appointed. No settlement was reached and a hearing was held on September 20, 2018, at which the Court announced its decision to dismiss this bankruptcy case. While the Court set forth its reasons for dismissal at the September 20, 2018 hearing, the undersigned has elected to set them forth in this written Memorandum Opinion.

*Dismiss Bankruptcy* at ¶10, ECF No. 46; *Response to Motion to Dismiss Bankruptcy* at ¶10, ECF No. 64. The Operating Agreement is a lengthy document, but only a few of its provisions are germane to the motion to dismiss filed by JHVC.

Specifically, Section 4.1 of the Operating Agreement assigns the "full power and authority . . . to manage the business and affairs of [the Debtor] to the "Manager," which in-turn is initially defined as AVR Management, LLC. See Operating Agreement at p. 5.

Section 4.1 places certain limitations on the power and authority of the Debtor's "Manager." That is, Section 4.1 of the Operating Agreement sets forth instances where the "Manager" lacks authority to act on behalf of the Debtor "without first obtaining written approval of the holders of a Majority Interest of the Class A Units" of the Debtor.

One instance where the Manager lacks the capacity to act without the express written consent of the holders of the "Majority Interest of the Class A Units" is when the "Manager" desires to:

> commence any action or proceeding seeking liquidation, dissolution, reorganization or other relief [on behalf of the Debtor] under any bankruptcy, insolvency or other similar law . . .

See Operating Agreement at §4.1.6.

The term "Majority Interest" is defined in the Operating Agreement as being "Class A Members that, taken together, hold more than sixty six percent (66%) of the aggregate of all Percentage Interests of Class A Members entitled to act or vote on such matter." See id. at p. 5.

In turn, a "Class A Member" is defined in the Operating Agreement as a "Person admitted as a Class A member and identified as a Class A member on Schedule I attached hereto . . ." Id.

Schedule I to the Operating Agreement lists as "Class A Members" both Advanced Vascular Resources, LLC and JHVC. Schedule I further indicates that JHVC holds a Class A interest in the amount of fifty-five percent (55%) and that Advanced Vascular Resources, LLC holds a forty-five percent (45%) interest. Consistent with the ratable portion of their respective interests, Schedule I states that the "Number of Units Purchased/Awarded" to JHVC is 55,000 and the number awarded to Advanced Vascular Resources, LLC is 45,000.

Relying upon this equity structure, JHVC contends that the Debtor lacked the requisite authority to commence the instant bankruptcy case because JHVC never consented to the bankruptcy filing and never ratified it. Specifically, JHVC contends that absent JHVC's express written consent, the Debtor's bankruptcy filing is *ultra vires* due to the Debtor's failure to obtain approval from the Debtor's "Majority Interest" holders pursuant to § 4.1.6 of the Operating Agreement.

The alleged Debtor does not dispute JHVC's construction of the Operating Agreement generally. Instead, the Debtor contends that JHVC does not hold a 55% Class A Membership interest in the Debtor. Rather, the Debtor contends that JHVC holds a mere 3% interest and that Advanced Vascular Resources, LLC holds a 97% interest.

In support of its efforts to re-allocate member interests, the alleged Debtor

further concedes that Schedule I reflects a 55% membership allocation to JHVC, but nonetheless argues that Schedule I "is not reflective of the parties' intent and with other provisions of the Operating Agreement." See *Brief in Opposition to Motion to Dismiss Bankruptcy* at p. 2, ECF No. 74.

More particularly, the Debtor argues that a "Counterpart Signature Page" to the Operating Agreement contemplates that JHVC was required to make an initial payment or capital contribution of $480,000 as a pre-requisite to it obtaining its 55% interest. This "Counterpart Signature Page" states, in pertinent part, as follows:

> . . . the undersigned, by its signature hereto, agrees to become a Class A Member of the Company and be bound by all of the terms and conditions in the Agreement, effective as of the date set forth below, and shall make the following Capital Contribution: $480,000. Capitalized terms used herein and not otherwise defined shall have meanings ascribed to them in the Agreement.

The Debtor contends that JHVC only contributed a mere $36,000 upon execution of the Operating Agreement. As such, the Debtor contends that JHVC's interest is limited to 3%[3] and not 55%. The Debtor also argues, without much

---

[3] Schedule I describes the aggregate capital contributions by all Class A Members as being $1.2 million. Three percent of $1.2 million is $36,000. The Court also notes that the $480,000 capital contribution set forth in the Counterpart Signature Page deviates from the $550,000 figure set forth on Schedule I. Assuming that the reduction of the contribution by JHVC to $480,000 results in a reciprocal reduction of JHVC's member interests does not change the outcome of this matter as JHVC's consent to the bankruptcy filing would still be required. The Court reaches this conclusion because a reciprocal reduction would mean that JHVC would arguably hold at a minimum a 40% member interest, which is still a blocking position since "Majority Interest" is defined in the Operating Agreement as a vote of 66% of the Class A Members.

clarity or detail, that the Operating Agreement is ambiguous and that the remittance of only $36,000 by JHVC as an initial capital contribution means that the arrangement fails for want of "consideration."

Turning to the plain language of the Operating Agreement, Section 10.6 of the agreement provides that "[a]ll questions concerning the construction, validity and interpretation" of the Operating Agreement, with the exception of the non-compete provisions, are governed by Delaware law. Id. at p. 27.

Delaware follows the objective theory of contract. See Haft v. Haft, 671 A.2d 413, 417 (Del. Ch. 1995); Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co., No. C.A. 19209, 2002 WL 1558382, at *7 (Del. Ch. 2002) (unpublished opinion).

Although the law of contract generally strives to enforce agreements in accord with their makers' intent, the objective theory considers "objective acts (words, acts and context)" the best evidence of that intent. Haft, 671 A.2d at 417.

In addition, unambiguous written agreements should be enforced according to their terms, without using extrinsic evidence "to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997); see also City Investing Co. Liquidating Trust v. Cont'l Cas. Co., 624 A.2d 1191, 1198 (Del. 1993).

A court should not conclude that a contract is ambiguous merely because the parties disagree about its proper interpretation. Whether a contract is ambiguous is determined according to an objective, reasonable-person standard

Case 17-70825-JAD Doc 125 Filed 09/24/18 Entered 09/24/18 15:44:15 Desc Main
Document Page 7 of 11

and is a question of law. See Eagle Indus., 702 A.2d at 1233 n.8 ("The true test is what a reasonable person in the position of the parties would have thought it meant."). Words are to be given their ordinary meaning and should not be "tortured" to impart ambiguity where none exists. Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992); MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 210 (3d Cir. 2005)(Opinion by Judge, now Justice, Alito).

Thus, in order for the Operating Agreement to be rendered ambiguous as argued by the Debtor, it must first be objectively reasonable to read the Operating Agreement as making the allocation to JHVC of a 55% Class A Membership interest contingent on the full payment of a $480,000 capital contribution. The Court, however, does not find this to be the case.

The Court reaches this conclusion because the Operating Agreement itself makes express reference to JHVC's capital contribution of $36,000 and states unequivocally as follows at Section 5.1:

> Capital Contributions: Capital Account Balances. The Manager shall be responsible for maintaining accurate Company records, including the names, addresses, Capital Contributions and Percentage Interests of the Members. As of the date hereof, the initial Class A Members have made Capital Contributions in the amounts set forth on Schedule I. The Class A Members' respective Capital Contributions and Percentage Interests in the Company are set forth on Schedule I. ***Notwithstanding the foregoing, Johnstown Heart & Vascular Center, Inc. shall contribute $36,000 of its Capital Contribution upon execution of this Agreement, and the remaining amount his Capital Contribution obligation shall be deemed to be contributed as described in Section 6.1.3.***

Operating Agreement at § 5.1 (emphasis added).

As this language recognizes, JHVC was permitted to contribute only $36,000 upon execution of the agreement, and the remaining sums were "deemed" by the parties to have been contributed by JHVC. These provisions are plain and unambiguous. They are also not unreasonable in light of other provisions of the Operating Agreement.

Indeed, these provisions make sense as the agreement itself provides that JHVC expressly agreed to permit Advanced Vascular Resources, LLC to have the lion's share of distributions of the company's profits until the "Recovery Date," which is the date distributions total $1.2 million. This $1.2 million figure also equals the total amount of initial aggregate capital contributions by the Debtor's members as set forth in Schedule I to the Operating Agreement. Specifically, Section 6.1.1 of the Operating Agreement provides:

> Cash flow for each taxable year of [the Debtor] shall be distributed to the Members in proportion at such times as determined by the Manager as follows: (a) first, until the Recovery Date (as defined below), ninety seven percent (97%) to Advanced Vascular Resources, LLC and its permitted successors and assigns and three percent (3%) to Johnstown Heart and Vascular, Inc.; and (b) thereafter, to the Members pro rata in proportion to their Percentage Interest.

See id. at § 6.1.1.

In addition, the plain text of Section 3.2 of the Operating Agreement states that "[t]he Percentage Interests of each Class A Member shall be as set forth on Schedule I . . . ." Id. at §3.2. The use of the word "shall" is unequivocal and

-8-

demonstrative of the fact that JHVC was granted a 55% member interest.

Furthermore, the Court's interpretation is in accord with the Debtor's prior admissions in related litigation that "[p]ursuant to the Operating Agreement, [Advanced Vascular Resources, LLC] holds a 45% ownership interest in AVR-Johnstown while JHVC holds a 55% majority interest." See *Concise Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment on Plaintiffs' Complaint* at ¶17, 3:15-cv-22-KRG, ECF No. 46; see also *Memorandum Opinion* at 5, 57, 3:15-cv-22-KRG, ECF No. 78 (recognizing that it is an undisputed fact that "[u]nder the Operating Agreement, JHVC owns a 55% majority ownership interest in AVR-Johnstown and AVR holds a 45% ownership interest"); *Memorandum Order*, 3:15-cv-22-KRG, ECF No. 93 ("According to Schedule I of AVR-Johnstown's Operating Agreement and both of the parties' briefs, JHVC is a member of AVR-Johnstown with a 55% membership interest in AVR-Johnstown."); and *Memorandum Order*, 3:15-cv-22-KRG, ECF No. 88 ("According to Schedule I of AVR-Johnstown's Operating Agreement, JHVC is a Class A member of AVR-Johnstown with a 55% membership interest in AVR-Johnstown.")

In rendering its decision today, the Court also notes that the Debtor cites to several pieces of extrinsic evidence in support of its claim that JHVC's member interest should be re-allocated to a 3% interest. The pieces of evidence cited by the Debtor include K-1 tax documents.

Delaware law, however, commands that no extrinsic evidence may be used

to "interpret the intent of the parties, to vary the terms of the contract or to create ambiguity." MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d at 210. The evidence cited by the Debtor is therefore inadmissible parol evidence.

Even if the Court could consider the evidence cited by the Debtor, the Court finds such evidence unconvincing. For example, JHVC did not participate in the preparation or filing of the tax documents cited by the Debtor and the Debtor's effort to impute them to JHVC does not make any sense. Rather, the Debtor's invocation of them is self-serving and unpersuasive.

For all of these reasons, the Court finds that the Debtor's bankruptcy filing is *ultra vires* and must be dismissed.

For purposes of completeness, the Court further notes that dismissal ordinarily results in dismissal of pending adversary proceedings that have been filed in connection with a bankruptcy case. An exception shall apply *sub judice*.

The record of this bankruptcy case is that a civil action in the District Court captioned as Samir Hadeed, M.D. and Johnstown Heart and Vascular Center, Inc. v. Advanced Vascular Resources of Johnstown, LLC, et al., 3:15-cv-22 was pending when the instant bankruptcy case was filed (the "Prior Pending Action"). This Prior Pending Action was then referred to this Court once this bankruptcy case was filed, and the Prior Pending Action was re-docketed by the Bankruptcy Clerk at Adversary Proceeding No. 18-7001-JAD.

In light of the fact that this bankruptcy case is going to be dismissed, it is appropriate that the reference be withdrawn by the District Court with respect to

the Prior Pending Action so that the lawsuit may continue in that forum. Under these circumstances, an order shall be entered that:

1. Dismisses this bankruptcy case because it has been filed without the requisite corporate authority; and

2. Stays the dismissal for a period of 14 days to permit the United States District Court to withdraw the reference of the Prior Pending Action.

Date: September 24, 2018

                              Jeffery A. Deller
                              United States Bankruptcy Judge

cc: David Fuchs, Esq.
     Kevin Petak, Esq.
     Charles Zebley, Esq., Chapter 11 Trustee

FILED
9/24/18 2:55 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

-11-